THE ATTORNEY GENERAL
OF TEXAS



WILL WILSON
ATTORNEY GENERAL

March 31, 1961

Honorable William A. Harrison
Commissioner of Insurance
State Board of Insurance
International Life Building
Austin, Texas

Opinion No. WW-297 A

Re: Licensing of Credit Life
    Insurance Agents

Dear Sir:

This office has reconsidered its Opinion WW-297 dated November 8, 1957, which former opinion is withdrawn and overruled and the following opinion substituted in lieu thereof.

We quote from your opinion request as follows:

"Article 3. 53 of the Texas Insurance Code is the credit life, health and accident insurance statute pertaining to individual or personal insurance in which the insured is a borrower of money. Article 3. 50 is the statute pertaining to group insurance, and Section 1, paragraph (4) of the statute authorized group credit insurance to be written upon a number of persons who are debtors, and the creditor is deemed the policyholder.

"Article 21. 07-1 is the licensing law for legal reserve life insurance company agents. This statute exempts from its operation 'an agent selling credit life, health and accident insurance issued exclusively in connection with commercial loans.' Article 21. 07 is the statute which licenses agents for other types of operations than those contemplated under Article 21. 07-1. As credit life insurance agents are exempt from the provisions of 21. 07-1, it has been the practice of the State Board of Insurance to use the provisions of Article 21. 07 to license a credit life insurance agent who was selling credit life insurance under the provisions of Article 3. 53.

"We respectfully request your opinion as to whether a person selling group credit insurance under the provisions

of Article 3. 50, Section 1 (4) is exempt from Article
21.07-1; and if so, must such a person be licensed
under the provisions of Article 21. 07 ?"

Article 3. 50, Section 1 (4), provides for group life insurance in
the form of a policy issued to a creditor, who shall be deemed a policy-
holder, to insure debtors of the creditor, subject to the following re-
quirements:

> "(a)  The debtors eligible for insurance under
> the policy shall all be members of a group of persons
> numbering not less than fifty (50) at all times, who
> became borrowers, or purchasers of securities, mer-
> chandise or other property under agreement to repay
> the sum borrowed or to pay the balance of the price
> of the securities, merchandise or other property, pur-
> chased to the extent of their respective indebtedness,
> or the face amount of any loan or loan commitment,
> . . .

> "(b)  The premium for the policy shall be paid
> by the policyholder, either from the creditor's funds
> or from charges collected from the insured debtors,
> or both.

> "(c) . . .

> "(d)  The insurance shall be payable to the
> policyholder,  Such payment shall reduce or extin-
> guish the unpaid indebtedness of the debtor, to the ex-
> tent of such payment; . . ."

Articles 21. 07 and 21. 07-1 of the Texas Insurance Code require
the licensing of individuals acting as life insurance agents.  The ques-
tion presented is whether or not creditors who utilize group life insur-
ance under Article 3. 50 must obtain licenses under either one of these
two statutes.  You have indicated initial concern whether such creditors
come within the terms of the exemption contained in Article 21. 07-1,
1 (b) (5) which exempts from the term "life insurance agent":

> "(5)  an agent selling credit life, health and
> accident insurance issued exclusively in connection
> with commercial loan, . . ."

The above quoted exemption in Article 21.07-1 does not apply to "group insurance" issued under Article 3.50, Section 1(4). Reference to "credit life, health and accident insurance" as used in this exemption normally refers to the insurance written under Article 3.53 of the Texas Insurance Code and not to the insurance written under Article 3.50, the "group life insurance" statute. The definition of credit life insurance and credit health and accident insurance contained in Article 3.53 limits that insurance to insurance sold in connection with loans. Article 3.53, 1, B, (1). The requirements under Article 3.50, Section 1(4), heretofore quoted in this opinion, encompass a much broader coverage program than just lending transactions such as purchase agreements where the vendor sells the property partially on credit.

Secondly, this exemption in Article 21.07-1 will not apply to insurance issued under Article 3.50, Section 1(4), for the reason that the policyholding creditor under Article 3.50 does not "sell" insurance. The "creditor" provided for in Article 3.50 is sold a policy of insurance. There is no sale of insurance by the creditor to his debtor. He merely affords his debtors the opportunity of obtaining the protection of the group insurance policy previously purchased by him.

Under Article 3.50 (4), the proceeds of insurance are payable to the creditor and with the exception of the case of a "debtor with seasonal income" as therein described, the insurance cannot exceed the amount of the loan balance. Also, the responsibility for paying the premium is upon the creditor, though he may pay the premium either from his own funds or from charges collected from the insured debtor.

Article 21.07-1, Section 1, Subsection (b), provides as follows:

"(b) The term 'life insurance agent' for the purpose of this Act means any person who is an authorized agent of a legal reserve life insurance company, and any person who is a sub-agent of such agent, who acts as such in the solicitation of, negotiation for, or procurement of, or collection of premiums on, an insurance or annuity contract with a legal reserve life insurance company; . . ."

Subsection (a) of Section 3 of this same Article provides as follows:

"(a) No person shall act as a life insurance

agent within this State until he shall have procured a
license as required by the laws of this State."

This language supports the proposition that the Legislature
intended by this Article to require a license only of those who solicit,
negotiate, or procure the issuance of insurance policies, or who act
as agent for the insurance company in the collection of premiums.
A "creditor" acting in accordance with Article 3. 50 1(4) does not
perform these functions.   The policy is "sold to him;" he does not
sell it, nor solicit, negotiate, or procure its sale.

We do not believe that under the terms of Article 3. 50 (4) (b)
any premium is "collected" by the creditor from the borrower.   Rather,
this section clearly indicates that the payment of the premium to the
insurance company is the responsibility of the creditor with only per-
mission granted to pass this cost on to the borrower if the borrower
so contracts.

We therefore hold that a "creditor" who purchases a policy of
group insurance under the terms of Article 3. 50, Section 1(4), does not,
in acting pursuant to Article 3. 50-1(4), become subject to the licensing
provisions of Article 21. 07-1.

Article 21. 07-1, first enacted in 1955, in part supplants previous
Article 21. 07.   By the terms of Subsection (a) of Section 1 of Article
21. 07-2, it is provided that Article 21. 07 is repealed only to the extent
that it applies to the agents of legal reserve life insurance companies.
Article 21. 07 continues to apply to agents of other life insurance com-
panies, but does not attempt to define the term "life insurance agent."
Section 1 of this Article provides that when a person desires to act as
an agent for life insurance companies, he must make application to
the Insurance Department for such a license.   Section 5 of the Act
provides that:

"Sec. 5.   License Required as Precedent to
Transacting Business.   -- No person shall be autho-
rized to engage in business as the agent of any life
insurance company . . . until he shall have procured
a license from the Board of Insurance Commissioners
as herein provided, . . ."

Since there is no definition of the term "life insurance agent,"
we must look elsewhere in the Code for assistance.   Article 21. 01 of

the Code provides:

> "It shall not be lawful for any person to act within this State, as agent or otherwise, in soliciting or receiving applications for insurance of any kind whatever, or in any manner to aid in the transaction of the business of any insurance company incorporated in this State, or out of it, without first procuring a certificate of authority from the Board."

Article 21.02 of the Code is in part as follows:

> "Any person who solicits insurance on behalf of any insurance company. . ., or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, . . . or receive, or collect, or transmit any premium of insurance, . . . or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, . . . whether any of such acts shall be done at the instance or request, or by the employment of such insurance company, . . . shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter. . . ."

Once again (with reference to Article 21.01), the creditor in acting pursuant to Article 3.50 is not acting as the agent of the insurance company "in soliciting or receiving applications for insurance" or aiding in the transaction of its business. Article 21.02 excepts from the definition of agent those who do the acts enumerated for themselves. Thus, by reasoning similar to that above, in connection with Article 21.07-1, we hold that a "creditor" who purchases a policy of group insurance under the terms of Article 3.50, Section 1(4), does not in acting pursuant thereto become subject to the licensing provisions of Article 21.07.

It should be noted that in the event the creditor enlarged the

scope of his activities, Section 3(b) of Article 21.07-1 would prohibit an unlicensed "creditor" from receiving directly or indirectly any commission from the insurance company "for services as a life insurance agent."

We would also point out that the life insurance company may not agree, as an inducement to the writing of a policy under Article 3.50, 1(4), to pay any "commissions" to the "creditor" as that would constitute rebates prohibited by Article 21.21 of the Texas Insurance Code. An illegal rebate is defined by Article 21.21, 4, (8) (a) as follows:

> ". . .knowingly permitting. . .paying or allowing, or giving or offering to pay, allow, or give, directly or indirectly, as inducement to such insurance, or annuity, any rebates of premiums payable on the contract, or any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement whatever not specified in the contract;
> . . ."

Since we have previously concluded that the creditor does not act as the agent of the life insurance company, he does nothing that would entitle him to a commission and since whatever services he performs are for his own benefits as opposed to the insurance company, the insurance company cannot justify such payments as compensation for services rendered to it.

It should be noted that Sub-paragraph (iii) of Paragraph (b) of Subsection (8) of Section (4) of Article 21.21 exempts from the definition of rebates the

> "(iii)  readjustment of the rate of premium for a group insurance policy based on the loss or expense experience thereunder, at the end of the first or any subsequent policy year of insurance thereunder, which may be made retroactive only for such policy year."

Previous Opinion No. WW-297 is overruled and withdrawn.

## SUMMARY

A creditor under the terms of Article 3.50, 1 (4), pertaining to group life insurance is not within the exemption

of Article 21.07-1, 1 (b) (5).   Such a creditor is not required to obtain a license as a life insurance agent either under Articles 21.07-1 or 21.07 in acting pursuant to Article 3.50 1(4).   A life insurance company may not agree to pay any "commissions" to such a creditor as an inducement to the writing of such a policy of group life insurance.

Very truly yours,

WILL WILSON
Attorney General of Texas

By    *Morgan Nesbitt*
Morgan Nesbitt
Executive Assistant

By    *Richard A. Wells*
Richard A. Wells
Assistant

RAW/pe

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman
Houghton Brownlee
Gordon C. Cass
Ben M. Harrison

REVIEWED FOR THE ATTORNEY GENERAL
BY:
Leonard Passmore